## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLAYTON ANDREWS,

      Plaintiff,

      v.

THE BRETHREN MUTUAL
INSURANCE COMPANY,

      Defendant.

No. 4:19-CV-02107

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 28, 2023

## I.  INTRODUCTION AND BACKGROUND

This dispute arises from Defendant The Brethren Mutual Insurance Company's ("Brethren Mutual") decision to deny an insurance claim submitted by Plaintiff policyholder Clayton Andrews. Andrews purchased commercial property in Shamokin, Pennsylvania, and insured it with a policy from Brethren Mutual. Less than five months after the purchase, the property burned down. Andrews submitted a claim to Brethren Mutual, who conducted an investigation and denied the claim on the grounds that the fire had been set intentionally by Andrews or at his direction. Andrews proceeded to file suit against Brethren Mutual, who has since moved for partial summary judgment.

The Court will begin by setting forth the undisputed and disputed facts in this matter.

### A.    Undisputed Facts.

Andrews purchased 1-3 West Independence Street in Shamokin, Pennsylvania (the "Property") on August 3, 2017.[1] Andrews insured the commercial property with an insurance policy from Brethren Mutual (the "Policy"); the policy period was from August 4, 2017 to August 4, 2018.[2] The Policy's coverage limit was $2,865,000.[3] Andrews purchased the Policy through an insurance broker, Hauptly Insurance Agency, and worked with a sales agent named Eric Fryer.[4]

On December 14, 2017, a fire occurred at the Property and Andrews subsequently filed an insurance claim with Brethren Mutual.[5] Brethren Mutual then conducted an investigation, during which it worked with two different fire investigators and a private investigator, and took examinations under oath of Andrews and his brothers (the "Investigation").[6] On May 17, 2018, Brethren Mutual declined to cover Andrews' claim on the grounds that "the fire was set intentionally by [Andrews] or someone acting at [his] direction."[7] Brethren Mutual also voided the Policy, stating that Andrews had violated the Policy's "Concealment, Misrepresentation, or Fraud" condition.[8]

---

[1]    Doc. 36 p. 3.
[2]    Doc. 28, Ex. A (copy of insurance policy).
[3]    Doc. 1 ¶ 8.
[4]    Doc. 36 at p. 4.
[5]    Doc. 28 ¶ 4.
[6]    *Id*. ¶¶ 8-14.
[7]    *Id*., Ex. D (Copy of Coverage Determination Ltr.).
[8]    *Id*.

## B.    Disputed Facts

The parties dispute a number of facts. First and most generally, they dispute whether the fire was set intentionally. Andrews contends that it was not, and—based on the Investigation's findings—Brethren Mutual disagrees.[9] The Investigation cited multiple pieces of evidence to support its conclusion that Andrews had intentionally set the fire,[10] and Andrews cites conflicting evidence to support his assertion that the Investigation's conclusion was unreasonable and inaccurate.[11] The Court will describe the three most notable disputed facts below.

### 1.    Flammable Liquid in the Stairwell

The parties do not dispute that evidence of a flammable liquid was found in the Property's stairwell following the fire,[12] but they dispute why it was there. Andrews argues that the flammable liquid "was below quantities required for a positive identification," citing the December 14, 2017 Fire Investigation Report conducted by the Pennsylvania State Police (the "PSP Report").[13] Andrews further claims that this flammable liquid was from a substance called "Goof Off" that had been used in the stairwell as part of an ongoing refurbishment project.[14]

---

[9]   *See* Doc. 36 at pp. 11-12; Doc. 28 ¶ 7.

[10]  Brethren Mutual cites the reports of two fire investigators (Doc. 28, Exs. D and E), transcripts of examinations under oath of Andrews and his brothers (Doc. 28, Exs. G, H, I, and J), and the reports of a private investigator (Doc. 28, Exs. K and L).

[11]  Andrews cites reports created by the Pennsylvania State Police (Doc. 36, Exs. G and F), his own testimony and that of his brothers (Doc. 36, Exs. A, B, C, D), and the testimony of Mr. Fryer (Doc. 36, Ex. E).

[12]  *See* Doc. 36 at p. 14; Doc. 28 Exs. E (Alex Profka's Report) and F (Russel Andress's Report).

[13]  *Id.*, Ex. G (PSP Report) at p. 1.

[14]  *Id.*, Ex. A (Andrews Dep.) 103-106:1-21.

Brethren Mutual's Investigation found that the positive identification of this liquid "was sufficient enough to raise the probability that flammable liquid was present during the fire," and that "this fire was an intentionally set fire with the rapid progression and the way it proceeded up to the roof and then back down[.]"[15] Therefore, the parties dispute why the flammable liquid was present in the stairwell.

### 2.    Financial Motive

The parties also dispute whether Andrews had a financial motive to intentionally set the fire and cite to competing evidence regarding the Policy's coverage amount and the status of the Property's tenants.

### a.    Policy Coverage Amount

Andrews alleges that, throughout his negotiations with Fryer, Brethren Mutual not only approved of the coverage amount, but recommended increasing it.[16] Specifically, Andrews cites the following excerpts from Fryer's deposition testimony:

Q:    But with respect to the coverage on the property itself, [Andrews] had no involvement or he didn't change any of the coverage?

A:    No, the recommendations came from Brethren Mutual.[17]

---

[15]    Doc. 28, Ex. E (Profka Report) at p. 6; *see* Ex. F (Andress Report) at pp. 4-5 (stating similar or the same findings).
[16]    Doc. 36 at pp. 18-26.
[17]    *Id*., Ex. E (Fryer Dep.) 102:12-16.

Brethren Mutual argues that Andrews had a financial motive because the Policy's coverage amount ($2,865,000) was very high relative to the modest purchase price ($45,000).[18]

Therefore, the parties dispute whether the Policy's coverage amount was set so high because of Brethren's own requirements, or because of Andrews' desire to over-insure the Property with plans to burn it down.

### b.    Status of Tenants and Property Improvements

Brethren Mutual also asserts that Andrews had a financial motive to start the fire because the Property was losing tenants.[19] Andrews contends that three of his four leasing tenants were still paying rent and remained under lease agreements; only one tenant, a bakery, had been regularly delinquent in paying rent.[20] According to Andrews, he intended to renovate and make improvements to the Property, which casts doubt on any finding that he intentionally burned it down.[21] Consequently, the parties dispute what Andrews' intentions were for the Property and whether he was losing tenants.

---

[18]   Doc. 28 ¶¶ 19-21; Ex. G (Jan. 16, 2018 Andrews Exam.) at p. 19; Ex. A (copy of Policy).

[19]   *Id*. ¶¶ 25-27. The Court also notes that, in making this argument, Brethren Mutual cites to portions of Andrews' examination under oath that were not provided to the Court. *See id.* ¶ 27. The Court did not receive pages 173-177 of the examination transcript, as the Exhibit ends at page 122.

[20]   Doc. 36, Ex. B (Mar. 2, 2018 Andrews Exam.) 25-26:1-10.

[21]   *Id*., Ex. A (Andrews Exam.) 161:22-25-162:1-13.

### C.    Procedural History

Andrews initiated this lawsuit on December 11, 2019,[22] and Brethren Mutual responded with an Answer on January 13, 2020.[23] Andrews brought two causes of action against Brethren Mutual: (1) insurance bad faith; and (2) breach of contract.[24] Discovery has closed, and Brethren Mutual moved for partial summary judgment on the bad faith claim.[25] That motion has been fully briefed and is ripe for disposition.[26]

## II.    LAW

The legal standard for summary judgment is well established. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[27] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[29] "A defendant meets this standard

---

[22]  Doc. 1.
[23]  Doc. 4.
[24]  Doc. 1 ¶¶ 28-41.
[25]  Doc. 28.
[26]  *Id.*; Docs. 29, 36, 38.
[27]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[28]  Fed. R. Civ. P. 56(a).
[29]  *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

when there is an absence of evidence that rationally supports the plaintiff's case."[30] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[31]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[32] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[33] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[34]  "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[35]

---

[30]  *Clark*, 9 F.3d at 326.

[31]  *Id.*

[32]  *Liberty Lobby, Inc.*, 477 U.S. at 252.

[33]  *Id.*

[34]  *Id.*

[35]  *Id.* (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 447 (1871)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[36] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[37]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[38] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) citing to particular parts of materials in the record that go beyond mere allegations; (ii) showing that the materials cited do not establish the absence or presence of a genuine dispute; or (iii) showing that an adverse party cannot produce admissible evidence to support the fact.[39]

---

[36] *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[37] *Id.*
[38] *Liberty Lobby, Inc.*, 477 U.S. at 250.
[39] Fed. R. Civ. P. 56(c)(1).

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[40]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[41] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[42]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[43] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[44] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[45]

## III.    ANALYSIS

In Pennsylvania, to recover for insurance bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded its lack of

---

[40]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[41]  Fed. R. Civ. P. 56(e)(2).
[42]  *Id*. at (c)(3).
[43]  *Liberty Lobby, Inc.*, 477 U.S. at 249.
[44]  *Id*.
[45]  *Id*. at 249-50 (internal citations omitted).

reasonable basis in denying the claim.[46] The defendant insurer "can defeat a plaintiff's claim by showing that it had a reasonable basis to deny the claim," and it is not bad faith to "conduct a thorough investigation into a questionable claim."[47] With respect to bad faith claims, summary judgment in favor of an insurer "is appropriate where there is no clear and convincing evidence that [the insurer] knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[48]

As stated above, the parties dispute multiple facts. The inquiry for the Court, then, is whether these disputes are genuine (*i.e.*, whether a reasonable jury could return a verdict for Andrews),[49] and whether these disputed facts are material (*i.e.*, whether they could alter the outcome of Andrews' bad faith claim). The Court finds that while the disputes are genuine, they are not material to the outcome of the claim.

The first disputed fact is why the flammable liquid was in the Property's stairwell. Andrews, citing the PSP Report and his own testimony, ipse dixit, asserts that trace amounts of the liquid were present in the stairwell because "Goof Off" had been used as part of a refurbishment project.[50] Brethren Mutual, citing the findings of the Investigation, contends that the liquid was in the stairwell because Andrews or someone at his direction used it to intentionally set the Property ablaze.[51] The

---

[46]  *Verdetto v. State Farm Fire & Cas. Co.*, 510 F. App'x 209, 211 (3d Cir. 2013) (internal quotations and citations omitted).
[47]  *Id.*
[48]  *Bostic v. ITT Hartford Grp. Inc.*, 56 Supp. 2d 580, 587 (E.D. Pa. 1999).
[49]  *See Calle v. York Hosp.*, 232 F. Supp. 2d 353, 356 (M.D. Pa. Nov. 27, 2002).
[50]  Doc. 36 at pp. 14-18.
[51]  Doc. 28, Exs. E (Profka Report) and F (Andress Report).

Court finds this dispute to be genuine. A reasonable jury, when considering the PSP Report and Andrews' testimony regarding the refurbishment he was completing on the stairwell, could agree with Andrews that the flammable liquid was in the stairwell for an innocuous reason.

The second disputed fact relates to financial motive and why the Policy's coverage amount was so high relative to the purchase price of the Property. Brethren Mutual, citing to the disparity between the Property's purchase price and the Policy's coverage limit, argues that Andrews possessed the financial motive to set the fire intentionally.[52] Andrews, citing to the testimony of Fryer, states that Brethren Mutual required such high Policy coverage limits after conducting its own due diligence and inspection.[53] The Court also finds this dispute to be genuine. A reasonable jury could agree with Andrews and conclude that the Policy's high coverage amount was calculated and agreed upon at Brethren Mutual's insistence.

The third disputed fact, also relating to financial motive, is whether Andrews was losing tenants at the Property. Brethren Mutual, citing the emptiness of the Property and Andrews' communications with the bakery tenant, states that tenants were leaving the Property *en masse*.[54] Andrews disagrees, citing to his testimony stating that the bakery tenant was the only tenant not paying rent or complying with

---

[52] Doc. 28 ¶ 28.
[53] Doc. 36 at pp. 18-26.
[54] Doc. 28 ¶¶ 25-27.

the terms of its lease.[55] The Court finds this dispute to be genuine as well. A reasonable jury could agree with Andrews and find that he was not experiencing an exodus of tenants, and that he did in fact plan to improve the Property.

However, a genuine dispute is only half of the equation required for summary judgment analysis. Where genuine disputes exist, they must involve material facts, which is to say facts that could affect the outcome of a claim. And the disputes present in this case do not involve material facts. In order for a fact to affect the outcome of Andrews' bad faith claim, it would have to lead a reasonable jury to conclude that Brethren Mutual did not have a reasonable basis for denying benefits under the Policy, and that it knew or recklessly disregarded its lack of reasonable basis in denying the claim. The law is clear that it is not unreasonable for insurance companies to conduct and rely on investigations when denying claims.[56]

In fact, "if an insurer demonstrates that it conducted a substantial and thorough investigation, and that it relied on this investigation as a basis for deciding to continue or discontinue benefits, then the insurer defeats the bad faith claim."[57] And

---

[55]  Doc. 36 at p. 25, Ex. B (Andrews Exam.) 25-26:1-20.

[56]  *See*, *e.g.*, *Doherty v. Allstate Indem. Co.*, 734 F. App'x 817, 823 (3d Cir. 2018); *Greene v. U.S. Servs. Auto. Ass'n*, 936 A.2d 1178 (Pa. Super. Ct. 2007); *Sheare v. State Farm Mut. Auto Ins. Co.*, No. 95 CV 3581, 2002 Pa. Dist. & Cnty. Dec. LEXIS 223 (Feb. 21, 2002) (collecting cases where insurance companies conducted investigations and were found not to have acted in bad faith).

[57]  *Anderson v. Ins. Placement Facility of Pa.*, No. 000873, 2013 Phila. Ct. Com. Pl. LEXIS 32, at *9 (Feb. 5, 2013) (internal citations omitted) (finding that insurer did not act in bad faith because it conducted a "substantial and thorough" investigation of the insured's claims).

"[a] court may enter summary judgment against an insured who fails to demonstrate clear and convincing evidence of a bad faith claim."[58]

Courts have found insurers to have acted in bad faith in scenarios such as the following: (1) insurance company failed to timely investigate and accept a report of insured's claim following damage caused by a defect in the insured property's foundation;[59] (2) a motorist insurer refused to compensate, or even investigate the claim, of an insured motorist after the motorist suffered a serious accident;[60] (3) after conducting no investigation, an insurer terminated the insured's benefits on the grounds that the insured was no longer "totally disabled" based on an incomplete report by the insured's physician;[61] (4) after damage occurred to the insured premises, insurer unreasonably and without justification refused to pay proceeds and withheld a "hold back" payment for two years after the loss.[62]

Brethren Mutual's conduct here does not resemble that of insurers who acted in bad faith. The record indicates that the fire loss took place on December 14, 2017. Brethren Mutual's Investigation—conducted by third party investigators—took place over the next several months, and Andrews was denied coverage on May 17,

---

[58] *Leach v. Northwestern Mutual Ins. Co.*, No. 01-2364, 2005 U.S. Dist. LEXIS 39966, at *29-30 (W.D. Pa. Dec. 22, 2005).

[59] *Corch Constr. Co. v. Assurance Co. of Am.*, No. 1250-C, 2003 Pa. Dist. & Cnty. Dec. LEXIS 174 (Oct. 28, 2003).

[60] *Hollock v. Erie Ins. Exch*, No. 6790-C, 2002 Pa. Dist. & Cnty. Dec. LEXIS 236 (Jan. 7, 2002)

[61] *Mohney v. Gen. Am. Life Ins. Co.*, 116 A.3d 1123 (Pa. Super. Ct. 2015).

[62] *TDG P'ship. v. Regis Ins. Co.*, No. 92-01496, 1999 Pa. Dist. & Cnty. Dec. LEXIS 92 (Sept. 10, 1999).

2018.[63] The Investigation's findings were supported by photos of the Property, interviews and examinations under oath, and reports of a private investor.[64] The Investigation concluded that the fire had been set intentionally, and there is nothing in the record—certainly nothing clear and convincing—to indicate that it was unreasonable for Brethren Mutual to rely on that supported conclusion.

And it is important to note that an insurance company can make mistakes, behave negligently, or even exercise bad judgment without reaching the very high standard of conduct required for bad faith.[65] Brethren Mutual's conduct does not rise to that level. Even if a reasonable jury could find that the flammable liquid was in the stairwell because of the refurbishment project, that Brethren Mutual required the Policy's coverage limit to be high, and that Andrews was not losing tenants at the Property, that same jury could also find that it was perfectly reasonable for Brethren Mutual to review the Investigation's report, determine that the fire had been set intentionally, and deny Andrews' claim. The evidence available to Brethren Mutual at the time that it denied the claim supported its determination that the fire was intentionally set and that Andrews had a financial motive to set that fire. In sum, Andrews has failed to demonstrate by clear and convincing evidence that Brethren Mutual acted in bad faith.

---

[63] Doc. 28, Exs. D and E.

[64] *See* Doc. 28, Exs. D, E, G, H, I, J, K, L (Investigation's reports and supporting documentation).

[65] *See Frog, Switch & Mfg. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999); *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

Because the Court has established that no genuine dispute of material fact exists as to Andrews' bad faith claim, and that it was not unreasonable for Brethren Mutual to deny Andrews' claim, summary judgment is granted in favor of Brethren Mutual. Andrews' breach of contract claim survives, and he will have the opportunity to further dispute Brethren Mutual's denial of his insurance claim at trial.

## IV.    CONCLUSION

The Court grants Brethren Mutual's motion for partial summary judgment. An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge