IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLAYTON ANDREWS** | : | No. 4:19-CV-02107-MWB |
| | : | |
| **Plaintiff** | : | |
| v. | : | |
| | : | |
| **THE BRETHREN MUTUAL INSURANCE COMPANY a/k/a BRETHREN MUTUAL INSURANCE COMPANY** | : | JURY TRIAL DEMANDED |
| | : | |

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE REPORT AND TESTIMONY OF FIRE EXPERT RUSSEL L. ANDRESS

Plaintiff Clayton Andrews, by and through undersigned attorney, files this Motion *in Limine* to preclude the report and testimony of Defendant Brethren Mutual Insurance Company fire expert, Russel L. Andress at the time of trial and in support thereof avers as follows:

**I.   PROCEDURAL HISTORY OF THE CASE**

On December 11, 2019, Plaintiff Clayton Andrews (hereinafter "Mr. Andrews") filed a lawsuit for insurance bad faith and breach of contract against Defendant, Brethren Mutual Insurance Company (hereinafter "Brethren") arising from Brethren's failure to pay for a fire loss to a commercial structure in Shamokin, Pennsylvania. Discovery was conducted and expert witnesses retained. A jury trial is scheduled for November 13, 2023. This motion in limine is timely filed.

1

II. <u>**STATEMENT OF FACTS**</u>

On August 5, 2017, Plaintiff Clayton Andrews (hereinafter "Mr. Andrews") purchased a commercial property at I-3 West Independence Street, Shamokin, Pennsylvania ("the property") for $45,000.00. In anticipation of closing, Mr. Andrews purchased a policy of insurance through Defendant, Brethren for the property.

Brethren issued insurance policy number CPP 002406900 to Clayton Andrews (hereinafter the "Policy") with an effective date of August 4, 2017 through August 4, 2018. At all times relevant hereto, Mr. Andrews paid the premium for the Policy.

On December 14, 2017, a fire completely destroyed the building. Shortly after the fire Brethren issued a full reservation of rights to Mr. Andrews and later denied coverage for the building, its contents, or demolition and debris removal resulting in the subject litigation.

During the pendency of this matter, Brethren retained fire expert, Alex Profka to determine the cause and origin of the fire at the property. Mr. Profka prepared a report outlining his findings and opinions. ***A true and complete copy of the Profka report is attached as Exhibit A***.

As part of his investigation into this matter, Mr. Profka conducted a site inspection of the property on December 14, 2017 (within hours after the fire). At the time of the inspection, samples were taken by Officer Siko, of possible ignitable

liquids found on the property. Id. at pg. 2. The samples were then sent to the Pennsylvania State Police crime lab in Harrisburg. The results of the testing revealed that the samples had no common initiable liquid identified because there was not enough of a sample. Id at pg. 6. According to Mr. Profka, the inability to identify the sample was due to the intensity of the fire as well as the amount of water needed to extinguish the fire. Id. at pg. 6.

Based on the mere fact that ignitable liquid was identified, Mr. Profka opined that the fire was intentionally set with the use of some type of flammable liquid on the stairway. According to Mr. Profka, the fire originated in the stairwell of the premises, which was another indication that the fire was intentionally set.

During the pendency of this matter, Mr. Profka passed away.

As a result, Brethen retained Russell L. Andress as its fire expert in this matter. ***A true and correct copy of the Andress report is attached as Exhibit B***.

In his report, Andress provides a description of the property based on information contained in the Profka report. The report states as follows:

- I examined the report authored by Alex Profka, who was the initial investigator assigned by the Brethen Mutual Insurance Co. Mr. Profka notes that he physically examined the debris field in the collapse zone and found no evidence of electrical failure in the staircase.

- Mr. Profka's report indicates he returned to the fire scene on December 18, 2017, and met with a Shamokin police officer, Ray Siko, Pennsylvania State Police Fire Marshals Kirk Wren

and Vicky Spencer, as well as Dauphin County Detective, Dennis Woodring. Dennis Woodring is the handler for the accelerant canine (Locke).

- Mr. Profka's report has photographs identifying Canine Locke alerting to the presence of ignitable liquids at the entrance to the staircase on the main level.

Mr. Profka's report goes on to identify and describe photographs wherein he states Locke identified ignitable liquids in the debris field. See, Exhibit B, pg. 4-5

In his report, Andress also states "Pennsylvania State Police Laboratory report lists the possible reasons for not identifying the ignitable liquid. These reasons include (1) no ignitable liquid present; (2) an ignitable liquid present below quantities required for positive identification; (3) or an uncommon ignitable liquid. Id. at pg. 14.

Mr. Andress' report goes on to state:

- After reviewing the report authored by Alex Profka, I concur with his findings that identified the fire origin within the stairway leading to the upper levels of the structure. I also concur with Mr. Profka's opinion that an ignitable liquid was used to enhance the speed and destruction of this fire.

- After reviewing the report authored by Trooper Vickey Spencer, I concur with her opinion that identifies the fire origin as the stairs leading to the upper levels of the structure. I also concur with Trooper Spencer's opinion that an accelerant was used to enhance the fire in the stairwell. I do not concur with Trooper Spencer's opinion that there is a potential electrical failure as there is no evidence to support an electrical malfunction as a fire cause.

Id. at pg. 15.

Finally, Mr. Andress provides a final opinion wherein he states the following: (1) after a careful review of all the photographs, witness statements, examinations under oath and the positive alert from the accelerant dogs, it is my opinion within a reasonable degree of scientific certainty that the fire's incendiary nature and a case of arson; (2) the ignition source for the fire is a competent ignition source introduced to the ignitable liquid-soaked wood stairs located by the fire origin by the human hand.  Examples of competent ignition sources are lighter, match, candle, torch, etc. All reasonable accidental ignition sources were eliminated during this investigation. Id. at pgs. 6 and 16.

For the reasons set forth more fully below, the opinions and testimony of Andress must be precluded at the time of trial in this matter.

### III.    STATEMENT OF QUESTION INVOLVED

Whether the opinions and testimony of Andress should be precluded at the time of trial when the proffered ideas and opinions merely parrot the ideas and opinions of Profka in violation of the Federal Rules of Evidence?

**SUGGESTED ANSWER:     Yes**.

Whether the opinions and testimony of Andress should be precluded at the time of trial when the proffered opinions are not based on reliable methodologies and principles?

**SUGGESTED ANSWER:     Yes**.

Whether the opinions and testimony of Andress should be precluded at the time of trial when the proffered opinions are unfairly prejudicial and will not assist the trier of fact?

**SUGGESTED ANSWER:** **Yes**.

IV. <u>**ARGUMENT**</u>

<u>Standard for Expert Testimony</u>

Rule 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702. Admission of expert testimony under Federal Rule of Evidence 702 is guided by the United States Supreme Court's ruling in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The Supreme Court has charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Id. at 597.

This responsibility extends to testimony based not only on scientific knowledge but to testimony based on technical or other specialized knowledge as well. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed.

2d 238 (1999). The Third Circuit requires this Court to address a "trilogy of restrictions" on the admissibility of expert testimony under Rule 702. Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 320-21 (3rd Cir. 2003). First, the witness must be qualified as an expert. Second, the testimony must be reliable. Third, the expert testimony must "fit," meaning it must be relevant and assist the trier of fact. Id. For the purposes of this Motion, the defendants are not raising an issue with respect to the qualifications of Mr. Kersey, only the reliability and "fit" of his conclusions to the facts in the case.

As for the question of reliability, the proper inquiry "is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether 'the particular opinion is based on valid reasoning and reliable methodology.'" Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3rd Cir. 2000) (citation omitted). Both the Supreme Court and the Third Circuit have set out various lists of factors relevant to determining the reliability of an expert's testimony. These factors include, but are not limited to: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and

(8) the non-judicial uses to which the method has been put. Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3rd Cir. 1994).

The test of reliability, however, is flexible. The various factors do not necessarily apply to all experts or every case. Kumho Tire Co., 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 142.

To be admissible, an expert's report *simply cannot be based on unsupported speculation or conjecture*. Oddi, 234 F.3d at 158 (emphasis added). The proponent of such testimony, here the plaintiff, must prove by a preponderance that it is reliable, which is to say that the particular opinion is based on "valid reasoning and reliable methodology" rather than on the "subjective belief or unsupported speculation." In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742 (quoting Daubert, 509 U.S. at 509); Dearson v. Bostrom Seating, Inc., 241 F. Supp. 2d 494, 496-97(E.D. Pa. 2003).

Third Circuit courts have frequently noted, the Supreme Court has stated that "conclusions and methodology are not entirely distinct from one another." See, e.g., Oddi, 234 F.3d at 146 (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)); Rapp v. Singh, 152 F. Supp. 2d 694, 699 (E.D. Pa. 2001) (quoting the same). A court "must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the

expert and the methodology used." Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)(emphasis added). "A court may conclude that there is simply too great a gap between the data and the opinion proffered." Joiner, 522 U.S. at 146; see also In re TMI Litigation, 193 F.3d 613, 682-83 (3d Cir. 1999), opinion amended by 199 F.3d 158 (3d Cir. 1999), cert. denied sub nom. Gen. Pub. Util. Corp. v. Abrams, 530 U.S. 1225, 120 S. Ct. 2238, 147 L. Ed. 2d 266 (2000) and Dolan v. Gen. Pub. Util. Corp., 530 U.S. 1225, 120 S. Ct. 2238, 147 L. Ed. 2d 266 (2000).

Importantly, where the primary issue is one of a fire's cause and origin a party must adduce evidence not just of the fire's origin, but specifically the cause of the fire. See, State Farm Fire and Casualty Co. v. Holmes Products, et al., 165 Fed. Appx. 182, 187 (3d Cir. 2006) (emphasis added); Chester Valley Coach Works v. Fisher-Price, Inc., 2001 U.S. Dist. LEXIS 15902, 2001 WL 1160012, at *12-13 (E.D. Pa. Aug, 29, 2001); Pappas v. Sony Electronics, Inc., 136 F. Supp. 2d 413, 423 (W.D. Pa. 2000); and State Farm Fire & Cas. Co. v. Gopher Baroque Enters., 2010 U.S. Dist. LEXIS 137238 (E.D. Pa. Dec. 29, 2010). Unless the expert can present expert testimony as to the fire's cause, in terms of probabilities as opposed to mere possibilities, specifically by eliminating all but one reasonable potential cause, such testimony is not probative of anything. Breidor v. Sears. Roebuck and Co., 722 F.2d 1134, 1138 (3d Cir. 1983).

1. **Andress cannot "Parrot" the Opinions of Profka**

Federal Rules of Evidence do not permit an expert to simply "parrot" the ideas of other experts or individuals. An expert cannot simply be the mouthpiece of another expert." St. Paul Fire & Marine Ins. Co. v. Nolen Grp., Inc., 2005 WL 1168380, at 10 (E.D. Pa. May 13, 2005); see also In re: James Wilson Assocs., 965 F.2d 160, 173 (7th Cir.1992) ("[T]he judge must make sure that the expert isn't being used as a vehicle for circumventing the rule against hearsay.') "Cases have recognized that an expert may rely on the work of others, but the expert must be able to testify to the veracity of that work." Id.; see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 286 F.R.D. 266, 271 (W.D. Pa. 2012)

Here, Brethren merely attempts to use Andress as a surrogate to testify at trial in place of Profka who conducted the inspection, examination, and testing of the fire scene. A cursory review of the his report shows that Andress merely recites almost word for word the ideas and findings of Profka with regard to the examination of the debris, what is depicted in the photographs that were taken by Profka of the scene, the origin of the fire, the identification of ignitable liquids on the scene and the incendiary nature of the fire. In fact, on page 15 of the report Andress goes so far as to recite the opinions of Profka and State Trooper Vicki Spencer with regard to the origin of the fire and use of accelerant. See, Exhibit B, pg. 15. It is clear that Andress

is simply parroting the opinions of another expert and witnesses in his report and said opinions must be excluded at the time of trial in this matter. [1]

### 2. Andress Cannot Offer a Reliable Opinion as to the Origin and Cause of the Fire

Mr. Andrews challenges the opinions of Andress on the basis that Andress failed to collect sufficient data and apply reliable methodology and principles in reaching his opinions as required under Rule 702.

In his report, Mr. Andress simply relied upon findings of Profka and the Pennsylvania State Police relating to origin, cause and the fact that the fire was arson. Andress opinions are not based on his fire investigation or experience or the data he collected. In fact, Andress did not collect any data. He did not examine the property. He did not take photographs of the scene. He did not observe the condition of the stairwell after the fire. He was not involved in the collection of debris. He did not take part in the identification or testing of accelerants. He did not inspect the heating system or electrical system in the building. Rather, Andress' makes conclusory statements that have no basis in fact or principle. For example, by his own admission the alleged accelerant found at the scene was in such a small quantity that it could not be identified. According to Andress one of the reasons the accelerant cannot be identified was because there was no accelerant present (i.e. false positive).

---

[1] It cannot go unnoted that the opinions Andress is relying upon are those of an expert that has passed and will not be subject to cross examination by Mr. Andrews.

Moreover, Andress failed to identify, with any specificity, the source of the alleged ignition or how he determined the fire was the result of arson. He has failed to provide any analysis as to how he ruled out the heating system, electrical system, gas leak, or the possibility of spontaneous combustion. Rather, Andress simply states that the fire was set by a competent ignition source such as a lighter, match, candle, torch, etc. Unbelievably, Andress offers this opinion despite the fact that no other investigative authority came to a similar conclusion. Nor does Andress provide any factual predicate to support this conclusion.

Simply stated Andress' opinions do not drive from any testable hypothesis as to the origin or cause of the fire or that the fire was the result of arson. As such all of Andress' opinions must be precluded at the time of trial in this matter. See, Maldonado v. Walmart Store, 2011 WL 1790840 (E.D. Pa. May 9, 2011) (even after reviewing statements, depositions, law enforcement reports and scene photos, plaintiff's expert's opinion as to what caused a child to drown in a pool were not derived from any testable hypothesis. Because the expert's opinion lacked any sound methodology and was based on pure speculation, the report was excluded).

**3. Andress Opinions are Unfairly Prejudicial and Will Not Assist the Trier of Fact**

Andress' opinions and testimony are unfairly prejudicial and will not assist the trier of fact, as it is based on flawed factual assumptions or unsupported analysis. Under Federal Rule of Evidence 403 relevant evidence "may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." An expert's testimony ought to be excluded where the prejudicial effect would outweigh any probative value. Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir.2000) (holding that that permitting expert testimony that was "not grounded in the facts of the case" would not comply with the "fit" requirement of Rule 702 and "would significantly increase the risk of misleading the jury and confusing the issues, the very dangers against which Rule 403 defends.") Id. at 756.

Not only does Andress fail to base his opinions on facts of record and reliable methodology or principles, but the proffered opinions will not assist the trier of fact in determining the ultimate issues in this case. Andress investigated this fire with a preconceived notion that it was arson and that Mr. Andrews was directly or indirectly responsible for starting the fire. However, Andress has not presented an opinion that one could judge as more likely than not the fire was caused by Mr. Andrews. At this juncture there is absolutely no evidence linking Mr. Andrews to the fire. Frankly, the only support that Andress lends to argument that the fire was intentionally was his own say so. Andress cannot identify an alleged ignition source, he cannot place Mr. Andrews at the scene on the night of the fire, nor can he state with any certainty the accelerant used to allegedly ignite the fire. Andress' opinions are based entirely

on speculation with regard to what may have actually caused the fire and who was responsible for it.

Accordingly, because there is no evidence presented, circumstantial or direct, that would assist the trier of fact in making ultimate determination as to ignition source of the fire or of Mr. Andrews alleged involvement in causing the fire, the opinions of Andress must be precluded at the time of trial.

**IV.   CONCLUSION**

For the reasons set forth above, this Honorable Court should grant the within Motion *in Limine* in the form of the attached proposed Order.

Respectfully submitted:

FANELLI, EVANS & PATEL, P.C.

By:__*/s/ James J. Amato*_____
JAMES J. AMATO, ESQUIRE
Attorney I.D. No. 203523
One Mahantongo Street
Pottsville, PA  17901
Phone: (570) 622-2455
 Fax: (570) 622-5336
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAYTON ANDREWS | : | No. 4:19 –CV-02107-MWB |
| Plaintiff | : | |
| vs. | : | |
| THE BRETHREN MUTUAL INSURANCE COMPANY a/k/a BRETHREN MUTUAL INSURANCE COMPANY | : | JURY TRIAL DEMANDED |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am this date serving a true and correct copy of the foregoing ***Plaintiff's Brief In Support of His Motion in Limine to Preclude The Report and Testimony of Fire Expert Russel L. Andress upon*** the following in the manner set forth below:

### VIA EFILING ONLY
Martin A. Durkin, Esquire
1760 Market Street #601
Philadelphia, PA  19103

By:   /s/ **James J. Amato**
JAMES J. AMATO, ESQUIRE

Date:  August 14, 2023