# AMERICAN FIRE LOSS ANALYSIS  Inc.

54 Helen St.

Plains, PA 18705

Phone: 570-814-1298

Fax: 570-822-5756

randress@comcast.net

## ASSIGNMENT:

The assignment to conduct an origin and cause investigation was received on April 4, 2022, from Martin Durkin Esq. of Durkin Law Offices P.C. The fire to be investigated occurred on December 14, 2017, at the commercial structure located at 1-3 West Independence St. Shamokin, PA 17872. The fire was reported to emergency services by Victoria Eckbold at 0134 hrs. This investigation was completed using the provided photographs, reports, and depositions along with a physical site visit, and interviews.

## SCENE DESCRIPTION & EXAMINATION:

The fire loss is a three story multiuse structure of Type 3 ordinary construction which was utilized as a commercial structure with multiple occupancies. The structure was covered by both a flat rolled rubber roof and a common asphalt shingle roof on the pitched section. The structure measured approx. 80'W x 180'D and received electricity by way of an overhead drop. The overhead drop provided power to multiple breaker and fuse panels located within the basement of the structure. The structure was heated by a

natural gas fired hot water boiler which was also located within the basement. The structure was equipped with a metal fire escape on the "D" (right) side of the structure and the main entrance to the structure was located on side "A" (front). At the time of the discovery of the fire the structure was not physically occupied by any known persons.

A systematic fire scene examination was conducted through the use of photographs provided by multiple sources, along with interviews of first responders as well as fire investigation reports from both public and private entities.

The exterior scene investigation began with an examination of photographs supplied by Fire Chief Steve Jeffries and Deputy Chief Ken Pilkus. These photographs show the fire progression within the structure shortly after their arrival and as the fire progresses. Side "A" (front) is identified as the entrance area to the "Fun Sop" on East Independence St. Side "A" exhibited heavy smoke ventilation by way of the 3rd floor window opening as well as fire visible venting through the roof. Deputy Chief Pilkus's photograph shows visible fire in the common hallway leading to the stairway to the upper levels. Side" B" (left) is identified as the wall along the alley leading from East Independence St., and West Commerce St. Side "B" has no window or door openings, and no visible fire damage was observed. Side "C" (rear) is identified as the wall at West Commerce St. The only visible damage to side "C" is at the 3rd floor window openings which was the result of fire ventilation. Side "D" (right) is identified as the wall along North 8th St. The initial photographs show smoke venting from the 2nd and 3rd floor window openings, but no visible fire. Photographs of this wall after the fire was extinguished show a collapse of

the front section of wall into the street. After examining all of the photographs provided for this loss it was clear that this fire began within the structure.

The interior scene examination began with an examination of photographs supplied by fire personnel and fire investigators who physically examined the fire scene, as well as interviews with Deputy Chief Ken Pilkus who was inside the structure during the initial fire attack. The interior scene examination was limited due to the partial collapse of the structure as a result of fire damage. Deputy Chief Pilkus along with Firefighters Jason Molzon and Kevin Hein Jr. made the initial entry into the structure to attack the only visible fire on the first floor of the "Fun Shop" entrance on East Independence St. The photograph taken by Deputy Chief Pilkus clearly shows heavy fire in the common hallway at the stairway leading to the upper floors. Post fire photographs clearly indicate a sustained fire in the stairway which compromised the structural integrity of the stairs above resulting in their collapse. Photographs taken from above the structure revealed that the stairway structure was completely consumed at the "B" side wall, and a "clean burn" of the soot deposits indicate an extremely hot sustained fire on the stairs above the main level. The photographs taken from the raised fire department aerial ladder also show that the 2nd and 3rd floor structure to the rear of the staircase is fire damaged but intact. The examination of photographs taken during the demolition of the structure show that the "D" side of the structure suffered much less damage than the "B" side where the staircase was located. Photographs taken by the initial origin & cause investigators identify high fire damage along the ceiling of the hallway at the entrance to the staircase leading to the upper levels. The high fire damage identifies the fire origin as the stairs leading to the upper floors. I continued to examine the photographs provided as part of

this investigation and found that the wood structural members that collapsed from the 2nd and 3rd floor stairs were heavily charred indicating a sustained fire in the stairway. I continued to examine the photographs and found no indications of a fire origin except at the staircase leading from the main level to the upper floors.

After determining that the fire originated within the staircase leading from the main level to the upper levels, I examined the photographs, interviews and examinations under oath to identify what competent ignition sources were present within the staircase to initiate this fire.  I examined the report authored by Alex Profka who was the initial investigator assigned by the Brethren Mutual Insurance Co. Mr. Profka notes that he physically examined the debris field in the collapse zone and found no evidence of electrical failure in the staircase. Mr. Profka's report indicates that he returned to the fire scene on December 18, 2017 and met with Shamokin Police Officer Ray Siko, Pennsylvania State Police Fire Marshal's Kirk Renn, and Vickie Spencer, as well as Dauphin County Detective Dennis Woodring. Dennis Woodring is the handler for accelerant canine (Locke). Mr. Profka's report and photographs identify canine Locke alerting to the presence of ignitable liquids at the entrance to the staircase on the main level. Canine Locke also alerted to the presence of ignitable liquids in the debris field beneath the collapsed staircase. Three separate samples of debris were taken from the areas where Locke alerted. These three samples were placed into clean metal cans and were removed to the exterior of the structure. Photographs provided indicate that Detective Woodring set up a "can test" for canine Locke in which he placed the cans of recovered samples along with several cans of debris known to be free of ignitable liquids. The photograph's show canine Locke alerting to the cans containing the debris samples removed from the

fire scene. The alert by canine Locke indicated that the fire debris samples did contain ignitable liquids from the areas identified at the fire origin, and the debris field. Deputy Fire Chief Ken Pilkus along with two other firefighters made the initial attempt to extinguish the fire found in the staircase. My interview with Deputy Chief Pilkus revealed that there was heavy fire on the stairs leading to the 2nd level after he forced entry into the locked doors on the "A" side of the structure. Deputy Chief Pilkus related that the two firefighters with him were controlling the 1 ¾ inch hose line and were dousing the fire on the stairs. Deputy Chief Pilkus related that they were able to knock down the fire on the stairs initially, but it re-ignited three times before their hose line was severed by falling glass. The reignition of the fire on the stairs was likely the result of the reignition of vapors from an ignitable liquid on the stairs. Deputy Chief Pilkus related that the photograph that he took of the fire at the staircase was after the 3rd reignition.  On December 14, 2017 Trooper Vickie Spencer interviewed Stephen Bokunewicz who was a member of the Masonic Lodge which rented the entire 3rd floor of the building. Bokunewicz told Trooper Spencer that he and several other members were at the building on the night of December 13, 2017. Bokunewicz told Trooper Spencer that the meeting ended at approx. 2130hrs, and the group exited, locking the doors as they left. Bokunewicz told Trooper Spencer that there was no one around when they left and there was no indication of anything out of the ordinary. Examinations under oath of Clayton Andrews (Building Owner) and Chris Swolensky (Brother of Clayton Andrews) revealed that the stairway where the fire originated consisted of wood steps covered by rubber matting. Prior to the fire the rubber matting was removed exposing the bare wood. The exposed bare wood would have allowed an ignitable liquid to penetrate into the fibers of the stairs. The reignition of the steps observed by firefighters is likely the result of the

ignitable liquid vapors continuing to emit from within the exposed steps. After a careful evaluation of all of the photographs, witness statements, examinations under oath and the positive alert from the accelerant canine it is my opinion within a reasonable degree of scientific certainty that this fire is incendiary in nature and a case of Arson.

INTERVIEWS:

**Chief Steve Jeffries**, Shamokin Fire Dept. Ph: (570-648-1151 was interviewed on May 6,2022 at the Shamokin Police Headquarters. Chief Jeffries related that he was home when the dispatch came in for this working fire. Chief Jeffries related that when he stepped outside his home, he could see a glow in the sky and immediately issued a 2nd alarm. Chief Jeffries related that he picked up Deputy Chief Ken Pilkus and they responded to the fire scene together. Upon arriving at the fire scene Chief Jeffries did an immediate size up of the situation and found visible fire in the first floor hallway and heavy smoke coming from the "AB" 2nd and 3rd floor windows. Chief Jeffries related that the remainder of the building was heavily charged with dark smoke. Chief Jeffries related that Deputy Chief Pilkus, and two firemen grabbed a 1 3/4" hose line and forced entry to the main level by way of the East Independence doorway. Chief Jeffries related that the line team led by Pilkus were attempting to extinguish a large fire in the stairway when glass from windows above fell to the ground severing the fire hose. Chief Jeffries related that the fire began blowing from the 2nd and 3rd floor windows on the "AB" side and he evacuated the fire crews and began to attack the fire from the exterior. Chief Jeffries related that the fire grew quickly, and they were finally able to extinguish the fire with master streams and aerial hose streams. Chief Jeffries related that during the firefighting

efforts the "AD" wall collapsed into the street, and the stairway along the "AB" side collapsed into the basement.

**Deputy Fire Chief Ken Pilkus**, Shamokin Fire Department Ph: (570)648-1151 was interviewed on May 6, 2022 at the Shamokin Police Headquarters. Deputy Chief Pilkus related that upon dispatch he was picked up by Chief Steve Jeffries and they proceeded directly to the fire scene. Deputy Chief Pilkus related that he walked around the building conducting a fire scene size up to identify the fire source within the structure. Deputy Chief Pilkus related that the only fire found on the main level was in the common hallway at the East Independence St. (Side "A"). Deputy Chief Pilkus related that he directed two firemen to charge a hose line and after forcing entry through the front doors of the building they made entry into the common hallway. Deputy Chief Pilkus related that once in the common hallway he observed heavy fire in the stairway leading to the upper floors of the structure. Deputy Chief Pilkus related that the two firemen on the 1 ¾" line began to douse the flames on the stairs leading to the 2nd level and were successful in knocking down the fire. Deputy Chief Pilkus related that as they continued to put water onto the fire in the stairway the stairs reignited, and his firefighters had to put the fire on the lower stairs out again. Deputy Chief Pilkus related that his firefighters reported heavy fire in the stairway above them and as they continued to put water up into the stairwell the stairs at the bottom of the stairwell reignited a 2nd time. Deputy Chief Pilkus related that the firefighters put the lower fire out again and continued to douse the stairwell until they lost water pressure and evacuated the building. Deputy Chief Pilkus related that when he first approached the doorway on East Independence St. the glass of the doors was lightly soot covered and he could clearly see the fire coming from the

stairway leading to the upper levels. Deputy Chief Pilkus related that he thought it was highly unusual that the fire on the lower stairs kept reigniting.

**Raymond Siko, Chief of Police**, Shamokin Borough was interviewed on May 6, 2022. Chief Siko related that he was the officer assigned to conduct the criminal investigation of this fire for the Shamokin Police Department. Chief Siko related that Clayton Andrews bought the building in August 2017 for $ 45, 000 cash, and then insured the building for over $3 million. Chief Siko related that he was present and assisted Trooper Vickie Spencer (PSP Fire Marshal) with her origin and cause investigation at the fire scene. Chief Siko related that he was in agreement with Trooper Spencer that the fire originated in the stairwell leading to the upper floors and that an ignitable liquid was used to enhance the spread and intensity of the fire. Chief Siko related that he was also present when Dauphin County Detective Dennis Woodring and his accelerant canine (Locke) examined the scene for the presence of ignitable liquids. Chief Siko related that he observed canine (Locke) indicate the presence of ignitable liquids at the stairwell entrance on the main level, and in debris from the stairwell collapse. Chief Siko related that he took custody of the debris samples secured from the fire scene and submitted them to the Pennsylvania State Police Lab for testing. Chief Siko related that he conducted interviews with Clayton Andrews regarding the circumstances surrounding this fire and offered Clayton Andrews an opportunity to take a polygraph examination. Chief Siko related that Clayton Andrews refused the polygraph examination but produced a private (CVSA) (Voice Stress Analysis) to clear him from suspicion. Chief Siko related that he believes that the circumstances surrounding the fire and the amount of insurance on the building are very suspicious and his investigation continues.

**Corey Pilkus** (Masonic Lodge Member) Ph: (570)441-7027 was interviewed by telephone. Corey related that he is a member of the Masonic Lodge which occupied the entire 3rd floor of the subject fire building. Corey related that on the night prior to the fire he and other members attended a meeting which ended at 2130hrs. Corey related that the only heat to their floor of the building came from the gas boiler in the basement. Corey related that for the two weeks preceding the fire the heat was not working. Corey related that he would occasionally detect a slight odor of natural gas but was unsure of its source. Corey related that he remembers the new owners stripping the asbestos tiles from the stairs in the weeks prior to the fire, but never detected any odors form the chemicals being used. Corey related that on the night prior to the fire he did not smell smoke or notice anything else out of the ordinary. Corey related that he did notice buckets of material and tiles in the 1st floor hallway, and thought the buckets were white with black letters. Corey related that the tops were on the buckets, but he had no idea what they contained.

EXAMINATIONS UNDER OATH REVIEWED:

**Clayton Andrews**, 1712 West Norwegian St., Pottsville, PA 17901 PH: (570) 573-1738 submitted to an examination under oath on January 16,2018 at the Ramada Inn in Pottsville, PA. Clayton Andres was examined by Attorney Martin Durkin Esq., on behalf of the Brethren Mutual Insurance Co.  Clayton Andrews is a W/M who was 48 years of age at the time of the examination. Clayton Andrews is employed by Miners Auto Sales

LLC which he owns with his brother Christopher Swolensky. Clayton also owns several other properties with his brother Chris. Clayton purchased the property at 1 West Independence St in August 2017 for the sum of $5,000. Clayton owns the property independently of his brother and paid by cashier's check. Clayton insured the building with Brethren Mutual Insurance for 42.8 million and then acquired an additional business personal property policy for $500,000. At the time of the buildings purchase there were four tenants including a Piece of Cake Bakery on the rear main level, Shamokin Chapter of the Free Masons on the 3rd level, Geisinger Home Health & Hospice, and the accounting office of Francis Sobotor. Clayton related that Geisinger's lease had ended, and they had moved out. Clayton related that the Piece of Cake Bakery would have been gone at the end of the month. Clayton told the remaining tenants that he was the new owner, and the rent would be increased. Clayton related that some of the tenants may have keys, but he is the only person with all of the keys. Clayton submitted a water loss claim in September 2017, after a hose was left on in a maintenance closet. Clayton denied knowledge of who was using the hose. The water loss claim was settled for $45,000. Ten thousand dollars was paid to Servpro to remediate the water loss and $35,00 was retained by Clayton Andrews for repairs. Clayton admitted that he only used 4 to 5 thousand to repair the water damage. Clayton related that he did no major repairs to the building after its purchase but was going to remodel it and had the intention of listing the space for commercial renters. Clayton detailed the repairs being made to the main stairway leading to the upper levels. Clayton related that his brother Chris and younger brother Scott Andrews used "Goof Off" to remove the glue from the rubber stair mats in preparation for refinishing. Clayton related that he was last in the building 3 days prior to the fire and had not been back until he was notified of the fire.  Clayton related that he was notified of

the fire by text and picked up his brother Chris before driving to Shamokin. Clayton admitted that he never asked how the fire started, and that the only flammable liquids in the building were kerosene in a 2nd or 3rd floor storage closet and Goff Off which was used on the stairs. Clayton denies having set the fire and did not think he was under investigation. Clayton obtained a private voice stress analysis after declining to take a polygraph test which was offered by Chief Siko of the Shamokin police department.

**Christopher Swolensky** (Brother of Clayton Andrews) 429 Pottsville St., Minersville, PA 17954. Christopher submitted to an examination under oath on March 2, 2018, at the Schuylkill County Courthouse. Christopher was examined by Attorney Martin Durkin on behalf of the Brethren Mutual Insurance Co. Christopher is the younger brother of Clayton and is in business with him at the Miners Auto Sales in Minersville, PA. Christopher does co-own building with Clayton, but had no financial interest in the subject building. Christopher related that he was notified of the fire when his brother (clayton) rang his doorbell at 2-3am. Christopher related that Clayton was a nervous wreck and he decided to go to Shamokin with him because it was snowing. Christopher admitted to being interviewed by the Shamokin Police and State Police but denied knowing that there was an arson investigation. Christopher new that the building was insured as he walked Clayton through the process because he had experience in real estate. Christopher denied knowing what the insurance coverage amounts were. Christopher admitted that he told Clayton to raise the rent for the Masons as they were only paying $400 a month. Christopher related that he did do some work at the building such as clearing out storage area and painting. Christopher also related that he helped remove the rubber mats from the steps so that they could be stained. Christopher denied

having keys to the building, and only gained entry after getting a key from Clayton. Christopher related that he would lock up when he left and would return the key to Clayton. Christopher admitted that he knew about the water claim from the hose but denied any knowledge of the claim amount. Christopher questioned how the hose was left on but does not thing the claim is fraudulent. Christopher detailed numerous insurance claims he was involved in including a previous fire covered by Farmers Insurance Co. Christopher related that he gave that money to his brother Scott Andrews for demolition and to buy a new house. Christopher related that he did know Clayton was asked to take a polygraph but had already told Clayton to get one prior to being asked by the police. Christopher related that he and Clayton found a private lie detector test operator and he went with Clayton for that examination. Christopher related that there are a lot of valuable antiques in the building and the $500,00 personal property claim is justified. Christopher claims that he does not know who is responsible for the fire but added that there were no flammable liquids in the building, and they did not use "goof off" to remove the glue from the stairs.

**Scott Andrews** (Brother of Clayton Andrews) 51 South Delaware Ave. Minersville, PA 17954 submitted to an examination under oath at the Schuylkill County Courthouse on March 2, 2018. Scott was examined by Attorney Martin Durkin Esq on behalf of the Brethren Mutual Insurance Co. Scott is the older brother of Clayton Andrews and Christopher Swolensky. Scott related that he has no financial interest in the subject building but had been to the building with Clayton before he bought it. Scott related that he did have a prior fire claim with Farmers Fire Insurance Co., and the fire was a lint fire

in the dryer. Scott related that he and Christopher did some painting and spackling in the building prior to the fire when asked for help by Clayton. Scott related that Clayton paid him twelve dollars an hour to do the work. Scott denies any knowledge of the water damage claim submitted by Clayton prior to the fire. Scott related that he and Christopher were working on the stairs about two weeks prior to the fire. Scott related that they used "Goof Off" to remove the glue so they could refinish the stairs and make them look nice for the Masons. Scott related that his brother showed him a text from the Masons that he received the night prior to the fire. Scott related that they were complaining of no heat, and though it was strange that the building burned several hours later. Scott denies knowing how much Clayton paid for the building and related that he hasn't been back to the building since the fire. Scott related that he found out about the fire from Channel 16 news the morning after the fire. Scott related that he believed Clayton had insurance but denied knowing how much. Scott related that he doesn't talk business with his brothers.


MISCELLANEOUS:


- The weather reported at the time of the fire was light snow, with an East Northeast wind at 8mph and a temperature of 22 degrees (f). Data supplied by the Weather Underground.

- This fire was extinguished by the Shamokin City Fire Department under the command of Chief Steve Jeffries. Numerous other fire departments assisted with manpower and equipment.

- The criminal investigation into this matter is being handled by Police Chief Ray Siko of the Shamokin City Police Department.

- The initial 911 caller that reported this fire was identified as Victoria Eckbold of Shamokin, PA. Eckbold is deceased, and no interview information was available.

- At the time of the fires discovery the building was locked and forced entry of the structure was made by fire personnel.

- The evidentiary samples of fire debris which were secured from the fire scene were sent to the PA State Police Laboratory in Harrisburg, PA. These samples were tested in February 2018. The results of the testing were that no common ignitable liquids were identified in the samples. Accelerant canine (Locke) clearly indicated to the presence of ignitable liquids at the fire origin as well as in debris removed from the collapsed stairway. The unknown ignitable liquid was possibly diluted by the vast amounts of water used to extinguish this fire and the delay in recovering these samples. The PA state Police Laboratory report lists the possible reasons for not identifying the ignitable liquid. These reasons include "No ignitable liquid present" "An ignitable liquid present below quantities required for positive identification", "or an uncommon ignitable liquid". Given the alert by canine (Locke) on the debris as well as during a can test it is reasonable to conclude that an ignitable liquid was present but could not be identified by the laboratory.

- The reignition of the fire on the stairs witnessed by Deputy Chief Ken Pilkus also lends verification of the presence of ignitable liquids at the fire origin. Ignitable liquids which would have permeated the wood steps are not water soluble and their vapors would continue to reignite when subjected to an ignition source.

- The interviews conducted along with the examinations under oath and photographs identify kerosene as the only ignitable liquid present in the building. The kerosene was identified by Clayton Andrews as being stored in a maintenance closet on the 2nd or 3rd floor. No ignitable liquids were stored in the area of origin.

- No known electrical or mechanical issues in the hallway were identified by Clayton Andrews.

- The only known mechanical issue in the building was a problem with the natural gas boiler in the basement. No fire damage was found in the basement and no evidence of a natural gas event was identified.

- After reviewing the report authored by Alex Profka, I concur with his findings that identify the fire origin within the stairway leading to the upper levels of the structure. I also concur with Mr. Profka' s opinion that an ignitable liquid was used to enhance the speed and destruction of this fire.

- After reviewing the report authored by Trooper Vickie Spencer, I concur with her opinion that identifies the fire origin as the stairs leading to the upper levels of the structure. I also concur with Trooper Spencer's opinion that an accelerant was used to enhance the fire in the stairwell. I do not concur with Trooper Spencer's opinion that there is a potential electrical failure as there is no evidence to support an electrical malfunction as a fire cause.

<u>DETERMINATION:</u>

Based upon the scene examination, witness statements, interviews, examinations under oath, reports, photographs, and information to date it is my opinion within a reasonable degree of scientific certainty that this fire did originate within the open stairway which leads to the upper levels of the structure located at 1-3 East Independence St. Shamokin, PA 17872. The investigation of this fire incident clearly identified the fire origin within the stairway as evidenced by the rapid fire movement from the main level to the 3rd level. The fire patterns and fire damage identified in the photographs provided identify a sustained fire which resulted in the collapse of the stairs into the basement. The reignition of previously extinguished wood stairs as witnessed by Deputy Chief Ken Pilkus along with the identification of ignitable liquids by accelerant canine Locke indicate that an accelerant was poured onto the stairs to enhance the spread and intensity of this fire. The ignition source for this fire is a competent ignition source introduced to the ignitable liquid soaked wood stairs located at the fire origin by the human hand. Examples of competent ignition sources are lighter, match, candle, torch, etc. All reasonable accidental ignition sources were eliminated during this investigation.

The conclusions drawn within this report are based on analysis of all information gained from the scene examination and subsequent investigation. Information that may become available at a later date may justify the modification of the results or conclusion at that time.

Russel L. Andress, IAAI-CFI

American Fire Loss Analysis Inc.

(570) 814-1298



Side "A" (front) of 1-3 East Independence St. Shamokin, PA 17872 (Google)



Side "B" (left) of 1-3 East Independence St. Shamokin, PA 17872 (Google)



Side "C" (rear) of 1-3 East Independence St. Shamokin, PA 17872 (Google)



Side "D" (right) of 1-3 East Independence St. Shamokin, PA 17872 (Google)

3



Side "D" (right) of 1-3 East Independence St. Shamokin, PA 17872 (Google)



Side "A" (front) of 1-3 East Independence St. Shamokin, PA 17872



Side "B" (left) of 1-3 East Independence St. Shamokin, PA 17872



Side "C" (rear) of 1-3 East Independence St. Shamokin, PA 17872



Side "D" (right) of 1-3 East Independence St. Shamokin, PA 17872



Photograph of the smoke charged structure shortly after fire department arrival.
(Photograph provided by Chief Steve Jeffries)



Photograph of the fire encountered in the main level as viewed by Deputy Chief Ken Pilkus. The orange hose line that was cut by glass is seen on the sidewalk. This photograph was taken by Deputy Chief Pilkus after the 3rd reignition of the steps at the Fire origin.  (Photograph provided by Deputy Chief Ken Pilkus)



Photograph of the fire venting from the 2nd and 3rd floor front windows.



Photograph taken from above the roof of the structure.



Photograph taken from above the structure. Red arrows indicate "clean burn" where the stairwell was located before the collapse.



Photograph showing the collapse of the stairs as viewed through the window openings.



Photograph of the common hallway on the main level. The red arrow identifies the staircase leading to the upper levels.



Photograph of the collapsed structure of the staircase. The red arrow identifies the location of the stairs the reignited three times as viewed by Dep. Chief Pilkus.



Photograph of the deeply charred structural members from the collapsed staircase.



Photograph of the clean burn on the interior "B" wall where the stairs were located.



Photograph of the "clean burn" on the 2nd and 3rd level staircase landings.



Photograph of accelerant canine (Locke) alerting to the presence of ignitable liquids at the base of the main level staircase.



Photograph of the fire debris secured from the fire origin.



Photograph of a fire debris sample secured from the collapsed staircase debris.

Photograph of canine (Locke) alerting to the samples secured from the fire scene.